IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.  19-CR-145-LJV

ZACHARY ROGERS,

          Defendant.

# GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

**THE UNITED STATES OF AMERICA**, by and through its attorney, Trini E. Ross, United States Attorney for the Western District of New York, and the undersigned Assistant United States Attorney, respectfully files this response to Defendant's sentencing memorandum. Dkt. 50.

## PRELIMINARY STATEMENT

On December 8, 2020, the defendant, ZACHARY ROGERS ("ROGERS"), appeared before this Court and pleaded guilty to Count 3 of the Indictment which charged a violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2252A(b)(2) [possession of child pornography involving a prepubescent minor or a minor who had not attained 12 years of age]. The Presentence Report (PSR), consistent with the plea agreement, determined that ROGERS with a total adjusted combined offense level of 30 and criminal history category of I faces a guideline range of 97 months to 121 months. PSR ¶ 72. This memorandum is submitted in opposition to defendant's request for a non-guideline sentence of 60 months

imprisonment and in support of a sentence of imprisonment within the guideline range.

## STATEMENT OF FACTS

The government concurs with and relies on the statement of facts outlined in the PSR at paragraphs 11 through 22.

## DISCUSSION

I. **In Considering the §3553(a) Factors, this Court Should Conclude That a Sentence Within the Guideline Range Provides the Proper Punishment for the Offense of Conviction**

The United States recognizes that since *United States v. Booker*, 543 U.S. 220 (2005), the sentencing guidelines are advisory rather than statutorily mandated. However, when imposing a sentence, the Court is required to consider the guidelines, but must fashion a sentence that is consistent with the factors detailed in 18 U.S.C. § 3553(a). The United States contends a sentence of 97 months to 121 months imprisonment is reasonable and appropriate in light of the factors set forth in 18 U.S.C. § 3553(a).

Under Section 3553(a), the sentence imposed must reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public. *See United States v. Rattoballi*, 452 F.3d 127, 133 (2d Cir. 2006) ("In calibrating our review for reasonableness, we will continue to seek guidance from the considered judgment of the Sentencing Commission as expressed in the Sentencing Guidelines and authorized by Congress .... It bears noting that the Sentencing Commission is an expert agency whose statutory charge mirrors the § 3553(a) factors that the district courts

are required to consider."). The sentencing court must also consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). A court that imposes a sentence outside the applicable advisory guidelines range must do so on notice to the parties and must state "with specificity" both at sentencing and in the written judgment and commitment order its reasons for doing so. 18 U.S.C. § 3553(c).

While ROGERS now requests a sentence of 60 months imprisonment, the government objects to such a sentence as unreasonable given the § 3553(a) factors, as set forth below.

### A.     History and Characteristics of the Defendant Warrant A Substantial Term of Incarceration

ROGERS asks this Court to consider, among other factors, his personal background and characteristics in determining an appropriate sentence. Dkt. 50. In his introduction, ROGERS asks this Court to consider "why a young man like Zach has found himself under these circumstances." *Id.* at 1. The answer to that question is simple: He finds himself convicted of a federal felony offense because he intentionally possessed more than 21,000 images of child pornography, some of which depicted prepubescent minors engaged in sexually explicit conduct. Some of the images possessed by the defendant also contained sadistic or masochistic conduct or other depictions of sexual violence. He possessed this huge collection of child pornography for his own sexual gratification.

ROGERS claims that he was led to child pornography because of "a glut of on-line pornography". Dkt. 50 at 2. These "vast quantities of online pornography" desensitized

him and caused him "to turn to child pornography, despite having no actual interest in children, because of the 'rush' that it brings." *Id.*  On the contrary, the government maintains that it was only ROGERS' deviant sexual interests that led him to collect more than 21,000 images of child pornography.   The defendant's claims are nothing more than an attempt to blame someone else, or something else, for his criminal conduct.

Throughout his sentencing memorandum, ROGERS seeks to shift blame for his conduct.  The defendant "says" all the right things in his memorandum and purports to take responsibility for his actions, but what he actually "does" in his sentencing memorandum is attempt to shift blame.  He blames (1) the vast quantity of easily accessible online pornography; (2) his addiction to pornography; (3) his addiction to alcohol; (4) unreported and undocumented bouts of depression; and (4) societal norms that prevented him from seeking help for his addiction.  ROGERS even blamed law enforcement for misunderstanding his admissions that he posed as a 15-year-old boy to talk with a 12-year-old girl online.

Despite the fact that ROGERS admits that the Diagnostic and Standard Manual (DSM-V) "does not recognize an 'addiction' to pornography or any other pornography-related disorders or paraphilias," Dkt. 50 at 21, he goes to great lengths to argue that he suffers from such an addiction.  *Id.* at 21-26.  By not recognizing an "addiction to pornography" as a mental disease or defect or some other disorder in the DSM-V, experts in the field of psychology and psychiatry have obviously determined that no such malady exists.   It is

4

respectfully suggested that ROGERS claims to such an addiction should be disregarded by this Court as factually incorrect.

Based on a review of the PSR, there are no extraordinary characteristics of the defendant that warrant a sentence of just 60 months imprisonment. In most cases in which a defendant requests such a light sentence, the court has before it some evidence that the particular defendant was involved in his community, had served his country in the military, or had lead an otherwise exemplary life. *See United States v. Hanson*, 561 F.Supp.2d 1004, 1007 (E.D.Wis. 2008) (defendant "held a funeral director's license and operated a funeral home for over twenty years, taking over the business from his father. He appeared to have been a successful and well-respected businessman."); *United States v. Taylor*, 2008 WL 2332314, *1-2 (S.D.N.Y. June 2, 2008) (the defendant had "excelled academically," graduated from the "prestigious Bronx High School of Science," served in the United States Navy for over four years, and received numerous commendation medals); and *United States v. Grinbergs*, 2008 WL 4191145, *9 (D. Neb. Sept. 8, 2008) (defendant had "served in the Army Reserve and was discharged honorably."). In the present case, there is no evidence before this Court to suggest that the defendant lived as "honorable" of a life as the defendants from the above-cited cases.

B.  **The Nature and Circumstances of the Offense Warrant a Sentence Within the Guideline Range**

As set forth in the PSR, the offense of conviction involved more than 21,000 image files and 256 video files containing child pornography. PSR at ¶ 14. Most of the material possessed by the defendant involved prepubescent females, ranging in age from 9 to 12 (some

of which included toddlers), posed in various stages of undress and/or performing sex acts on adult men. *Id.* Some of the material involved bondage and beastiality. *Id.* When the electronic devices were seized from his home on January 28, 2018, ROGERS was interviewed by government agents. He admitted that he had been looking at child pornography for a few years. *Id.* at ¶ 15. It would take at least that long to collect more than 21,000 images of child pornography. Finally recognizing that his conduct was criminal, but only after being confronted by law enforcement, the defendant stated, "Oh my god. I'm a fucking creep." *Id.* at ¶ 16. Instead of expressing sympathy for the victims whose sexual exploitation he enjoyed watching for his own sexual gratification, the defendant's first question to law enforcement officers was "what's gonna happen to me?" *Id.*

After law enforcement officers left his home that day, ROGERS considered his options and ultimately decided that the best course of action for him was to flee the United States to avoid taking any responsibility for his actions. In addressing his flight from prosecution, ROGERS described the events of January 25, 2018 -- after federal agents interviewed him and left his home -- in detail. Although ROGERS claimed that he "scarcely recalls what happened next," Dkt. 50 at 13, he did remember drinking heavily and twice attempting to end his life. *Id.* But "[i]n a moment of impulse, he remembered his long-standing desire to see the world before he died, so he decided to buy the cheapest ticket to the farthest destination he could find from New York." *Id.* at 14. Apparently, ROGERS was despondent about his current circumstances, but not too upset to see the world before he committed suicide.

The defendant's rendition of his flight from the United States is fantastical. He makes

it sound as though he decided to go on a vacation and that he fully intended to return. The defendant in his sentencing memorandum makes it sound as though his flight was simply a whimsical adventure. In truth, the defendant fled the United States to avoid responsibility for his reprehensible actions. His flight was not an impulsive action. He had to plan his escape. The defendant notified his employer that he would not be working. He withdrew all the money from his accounts. He packed all his possessions. He made his flight arrangements to Vietnam. Almost as soon as he arrived in Vietnam, he left there and traveled to Europe. All to avoid apprehension. He was not a carefree world traveler enjoying the sights. He was a man on a mission. The defendant was a criminal trying to avoid detection and apprehension by traveling to multiple different countries in different parts of the world.

The defendant now seeks "sympathy" for beatings he endured while incarcerated in the country of Montenegro. There is no doubt that ROGERS underwent surgery while in Montenegro for which he begrudgingly admits receiving "good medical care." Dkt. 50 at 37. However, this Court is asked to believe that the reason for his surgery was because "mobster inmates" mistreated him based on the child pornography charges pending here. The only proof that the defendant was abused by other inmates <u>because of</u> the child pornography charges comes from the defendant. There is little doubt that the defendant has reason to seek sympathy and leniency from the Court. Was the defendant abused? Perhaps he was. Should the Court consider the defendant's claims of mistreatment? Of course. Just like the Court should consider the defendant's flight from prosecution. The Court should consider all the mitigating and aggravating circumstances in this case before imposing sentence.

It is respectfully suggested, however, that the Court consider two additional facts when considering his claims of abuse.   First, the defendant was incarcerated in Montenegro for an extended period because the defendant fought extradition.   ROGERS could have ended his torment at any time by simply "waiving" extradition.  He did not do that.  Instead, he determined that it would be better to endure the alleged indignities and physical abuse for months on end, rather than face criminal charges in the United States.   That does not make sense.   Secondly, ROGERS readily admits that he did not tell anyone about the abuse; not the prison guards, not his own attorney and not to anyone from the U.S. embassy that visited him while in prison.   Dkt. 50 at 18. It is plausible that ROGERS might not want to complain to prison officials about the alleged abuse for fear of reprisals.   However, it is difficult to imagine that someone in such a situation would not reveal the abuse he was allegedly experiencing to his attorney or to U.S. embassy officials.

### C.   The Seriousness of the Offense, the Need to Promote Respect for the Law, and to Provide Just Punishment All Warrant a Sentence within the Advisory Guideline Range

For the reasons cited above, the seriousness of the offense, the need to promote respect for the law and the need to impose just punishment all warrant a sentence of 97 months to 121 months imprisonment.

### D.   The Need to Afford Adequate Deterrence to Criminal Conduct and the Need to Protect the Public Warrant a Sentence Within the Applicable Guidelines Range

Child sexual abuse is one of the most insidious crimes in this country.   Both Congress and the United States Supreme Court have found that the prevention of sexual exploitation

and abuse of children constitutes a government objective of surpassing importance because of the psychological and physical effects such abuse has on children and their families.

As justification for higher sentences in child abuse offenses, Congress stated:

> (2) The Government has a compelling state interest in protecting children from those who sexually exploit them, including both child molesters and child pornographers. "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance, *New York v. Ferber*, 458 U.S. 747 (1982), and this interest extends to stamping out the vice of child pornography at all levels in the distribution chain." *Osborne v. Ohio*, 495 U.S. 103, 110 (1990).
>
> (3) The government thus has a compelling interest in ensuring that the criminal prohibitions against child pornography remain enforceable and effective. "The most expeditious if not the only practical method of law enforcement may be to dry up the market for this material by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product." *Citing Ferber*, 458 U.S. at 760.

The Protect Act, Title V. - Obscenity and Pornography, Sec. 501. Findings. As stated by Congress, the government has a compelling interest to protect children from sexual predators. *Ferber*, 458 U.S. at 757. A solution in effectively combating the rising tide of the sexual exploitation of children is for legislatures to authorize penalties severe enough to sufficiently deter pornographers from ever beginning the practice of exploiting children for sexual purposes. "If we are to achieve progress in attacking the growing problem of child pornography and its resulting harms, we must be prepared to adapt our responses to meet this very real threat in a world of 'virtual realities.'" (Brief of Amicus Curiae on Behalf of the National Center for Missing & Exploited Children at 15, *Ashcroft v. The Free Speech Coalition*, 122 S. Ct. 1389 (2001) (No. 00-795)).

Deterring other individuals from the sexual exploitation of children and protecting the public are critical issues for this Court to consider. Therefore, the government submits that a sentence of 97 months to 121 months imprisonment would provide adequate deterrence to the defendant and others interested in engaging in similar conduct and protect the public from further crimes of the defendant. 18 U.S.C. § 3553(a)(2)(B)**.**

## CONCLUSION

For the foregoing reasons, the defendant should be sentenced to a term of imprisonment of 97 to 121 months.

DATED:    Buffalo, New York, December 2, 2021.

                                TRINI E. ROSS
                                United States Attorney

                        BY:    s/ RUSSELL T. IPPOLITO, JR.
                                Assistant United States Attorney
                                United States Attorney's Office
                                Western District of New York
                                138 Delaware Avenue
                                Buffalo, New York   14202
                                716-843-5843
                                Russell.Ippolito@usdoj.gov