United States District Court
Western District of New York

---

United States of America,

*Plaintiff*

*vs*

Zachary Rogers,

*Defendant*

---

**Reply to Government's Response to
Defendant Zachary Rogers' Sentencing Memorandum**
19-CR-00145-V

---

Dated: December 3, 2021

HARRINGTON & MAHONEY
70 Niagara Street - Third Floor
Buffalo, New York 14202-3407
Ph: 716-853-3700
Facs: 716-853-3710
*Attorneys for Zachary Rogers*

# Contents

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     A.    The government conflates context with excuse for Mr. Rogers' involvement in this case, and invites this Court to make conclusions about the defendant for which it offers no evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.    The government has no reason to doubt the allegations of abuse . . . . . . . . 3

     C.    The government fails to respond to Dr. Kopfer's report . . . . . . . . . . . . . . 3

     D.    The government fails to support its claims about Mr. Rogers' alleged contact with an underage girl . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     E.    The government's claim about waiver of extradition is baseless . . . . . . . . 4

     F.    The government ignores clear signs of remorse . . . . . . . . . . . . . . . . . . . . . 5

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

# Introduction

The government has responded [59] to defendant Zachary Rogers's sentencing memorandum [50]. Our memorandum outlined how Mr. Rogers, who has no history of misconduct against children, was investigated and prosecuted for possessing child pornography after years of pornography use led him into addiction. Confronted by the horror of what he had done after investigators searched his home, he panicked and tried to commit suicide twice. Despondent and impulsive, he then fled abroad, ultimately traveling to Montenegro, where he was arrested and held on an INTERPOL warrant. While there, he savagely beaten and abused by fellow inmates, nearly resulting in his death. Returning to the United States a broken man, Mr. Rogers almost immediately pleaded guilty and has expressed remorse in the strongest possible terms, empathizing with the victims in this case because of the long-lasting repercussions which his own "seemingly endless physical and emotional abuse" have taught him. *See* Defendant's Statement [50], Ex. C.

The government's response deems this story "an attempt to blame someone else, or something else," [59] at 4, that his otherwise blameless life before his abuse of child pornography was not "honorable" *id.* at 5, that his account of his suicide attempts and desperate flight from the country is "fantastical," *id.* at 6, that "perhaps" he was abused, *id.* at 7, but that if he was, he essentially brought it on himself by not waiving extradition, *id.* at 8.

The government's response is unfortunate. There are two unstated but detectable assumptions behind the response: first, anyone who views child porn is automatically a pedophile and a remorseless child predator, and any attempts to explain this behavior are

disingenuous, and; second, if Mr. Rogers was attacked as we have alleged he was, he brought it upon himself and maybe even deserved it.

Neither assumption is justified. Neither assumption is legal, has any authority in case-law, psychological research, the sentencing guidelines, the history of this case, or in common sense. The government has been aware of Mr. Rogers' abuse since arraignment but did not begin to investigate or address it until we filed our sentencing memorandum. Without any evidence, it tries to cast doubt on what Mr. Rogers endured. It fails to address or refutes the arguments the defense actually raised. It does not dispute or even mention Dr. Kopfer's report observing psychological signs of trauma and lack of apparent predatory or antisocial behaviors. It does so with a cynicism that it cannot support with any evidence or authority of its own, apparently having failed to properly investigate these important aspects of this case until recently.

# Argument

## A.   The government conflates context with excuse for Mr. Rogers' involvement in this case, and invites this Court to make conclusions about the defendant for which it offers no evidence

The government starts its response with a category error. It claims that Mr. Rogers finds himself in his present situation because of the fact he committed the offense. This is true and not disputed. It is also irrelevant, because it mistakes a "how" for a "why." The defense has never argued that Mr. Rogers did not commit this offense or that he is somehow

2

not at fault for his behavior. What we presented in the memorandum was an explanation of why Mr. Rogers, who has no past history of misconduct with children, began to engage in this behavior. This is a "why" and not a "how." The "how" of this case is not at issue here.

The government's only apparent motive for raising this argument is its conclusory argument that "it was only ROGERS' deviant sexual interests" that led him to this behavior. [59] at 4. The government fails to offer any psychological report, psychological research, or other authority for this argument.

Congress did not include in 18 U.S.C. § 2252A(a)(5)(B) a requirement that any person pleading guilty to or convicted of the offense must admit that they are a sexual deviant. As noted in our memorandum ([50] at 40-45), even the U.S. Sentencing Commission has recognized that not every child pornography offender is the same, and there are varying reasons why people engage in this behavior. In any case, Mr. Rogers' admission that he was driven to viewing this material because of abnormal and unhealthy dependence on pornography both acknowledges his moral responsibility for the behavior and also points to an area where counseling and monitoring will benefit him in the future. The government's gloss is nothing more than an attempt to invent the status offense of being a pedophile, which is neither true of Mr. Rogers nor required under the statute to which he pleaded guilty.

**B.     The government has no reason to doubt the allegations of abuse**

The government has no reason to doubt the allegations of abuse. It does so only out of apparent fear that Mr. Rogers could "benefit" from it at sentencing, as if nearly being beaten to death in a foreign prison were a windfall. The government's recent attempts to investigate the basis of these allegations by obtaining records from the U.S. Consulate in Montenegro would have been fruitless for reasons described in the sentencing memorandum. [50] at 15-19. Also, Mr. Rogers has advised me that he was given discharge papers after his surgery which he kept with him and were eventually taken from him by U.S. officials as he was extradited. When I inquired about these records during this case, the government responded that it had no record of receiving them.

**C.     The government fails to respond to Dr. Kopfer's report**

The defense submitted a report by Dr. Paul Kopfer, a licensed psychologist, diagnosing Mr. Rogers with clear signs of psychological trauma, noting his remorse and shame, and noting an absence of psychological abnormalities typical of sexual predators. [59] at 30-32.

The government's failure to engage with this is particularly problematic for its arguments that Mr. Rogers is "blame-shifting" and remorseless. It is also problematic for the government's hedging about whether or not the physical abuse in Montenegro actually occurred.

4

**D.      The government fails to support its claims about Mr. Rogers' alleged contact with an underage girl**

The government doubles-down without any evidence on its claim that Mr. Rogers allegedly admitted to contact with a 12 year-old girl. It accuses him of "blaming" law enforcement for inventing this. The defense argued law enforcement had misinterpreted Mr. Rogers' admission that he had talked to a girl when he himself was underage. This does not "blame" law enforcement for anything. That word choice is an attempt by the government to shame the defense for questioning the government's conclusions. What the government has offered, however, is not proof.

**E.      The government's claim about waiver of extradition is baseless**

Beyond failing to address points the defense raised, the government's response also raises new issues by making new claims with no basis in fact. First,  the government makes the astonishing claim that Mr. Rogers chose to prolong his suffering in Montenegro by "refusing" to waive extradition. [59] at 8. In fact, that option was presented to Mr. Rogers before he was assigned an attorney by the Montenegrin government. He did not know what "waiver" meant, and without being able to consult with a lawyer, he did not waive it, though he advises he would have done so had he been aware of what waiver of the proceedings meant. The Montenegrin attorney eventually assigned to Mr. Rogers for his extradition proceedings visited him rarely and spoke through a translator. This lawyer had no contact with us and did not respond to attempts by us to reach her. Mr. Rogers advises that she never

raised the issue of waiver with him. Our firm had no involvement in the extradition proceedings whatsoever. The legal documents eventually provided to the defense through the U.S. Consulate provide no proof of a truly contested extradition. There is no sign that there were hearings held or arguments made by Mr. Rogers' attorney on his behalf. The paperwork suggests that the Montenegrin government followed a set procedure for extradition without any direct opposition from Mr. Rogers. Furthermore, in a phone call between AUSA Ippolito and me on or about November 19, 2019, when our firm was first retained, I asked whether it would be possible to waive extradition to bring Mr. Rogers to the U.S. more speedily: Mr. Ippolito's response was "no."

## F.     The government ignores clear signs of remorse

Next, the government claims that Mr. Rogers expressed no remorse when he was first confronted by law enforcement. [59] at 6. Yet, in the same paragraph, the government acknowledges that Mr. Rogers's immediate reaction to being caught was saying "Oh my god. I'm a fucking creep." *Id.* This spontaneously acknowledges his self-loathing for what he had done. It was an expression of his horror and self-revulsion. The government supposes that defendants in their first statements to law enforcement must make extended soliloquy directed at the victims. There is probably no recorded case in the annals of the Department of Justice where this has ever happened. Mr. Rogers' statement to the Court, attached to our memorandum as Exhibit C, makes a clear and even remarkable apology to the victims, recognizing the pain they have suffered precisely because he has also endured it.

# Conclusion

This case presents unusual circumstances for consideration in sentencing. It is rare that a defendant suffers severe emotional and physical abuse on the scale that Mr. Rogers has on account of his offenses. This abuse was the direct result of his crime. It is rare, in this sense, that a defendant may come to sentencing having already been so seriously punished. And, the government's arguments aside, no defendant in any case deserves to be beaten and abused almost to the point of death, for this type of offense or any other. Unfortunately, rather than acknowledge the punishment already received, the government makes vindictive and conclusory arguments that more prison is appropriate.

Dated:  December 3, 2021          /s/ Jesse Pyle

JESSE C. PYLE
HARRINGTON & MAHONEY
70 Niagara Street, 3rd Floor
Buffalo, New York 14202-3407
Tel.: 716-853-3700
Facs.: 716-853-3710
jpyle@harringtonmahoney.com
*Attorneys for Zachary Rogers*

7